Good afternoon, and may it please the court. My name is Gus Tupper, counsel for Mr. Chavez, and I'd first like to thank the court for allowing me to appear under the student practice rule, and I plan to reserve three minutes for rebuttal, but I'll watch my own time. The defendants jailed Mr. Chavez three times for asserting his Fifth Amendment right against self-incrimination, for asking to speak to his lawyer, and for filing this lawsuit. In dismissing the complaint, the district court told civil rights plaintiffs that they have no remedy for repeated incarcerations over valid assertions of the Fifth Amendment. It told probationers... Well, wait a minute, he did have a remedy, which he eventually invoked, right? Which was to have his lawyer go and get what's essentially something like an immunity. Yes, your honor, he, Mr. Chavez did eventually receive an immunity order. However, as the Supreme Court made clear in, you know, in in Castigar in United States v. Balsas, immunity is, you know, immunity must be provided before the state, before the state seeks to compel statements. So it's not a sort of retrospective grain of immunity. I thought he had immunity, and then he still refused to speak in the therapy session. Your honor, he had immunity before the third period of incarceration, before his third violation, which is why the Fifth Amendment claim only applies to the first two periods of incarceration before he had the immunity order. Counsel, what prevented him from getting the immunity declaration before the first, at the first two sessions? Well, your honor, you know, as the Supreme Court has made clear, the immunity is a uniquely, is a uniquely prosecutorial, it's for the prosecutor to decide. And there's an Oregon Supreme Court decision, State v. Soriano, that says, that says the prosecution has the unique, unique duty and the unique power to provide immunity. And it's a conscious prosecutorial choice is the language from Soriano. And, but then his lawyers seek it the third time. So it wasn't he didn't wait for the prosecutor to come by and knock on his door. He just went to court and said, we need it. And the government gave it to him. Well, your honor, his attorney petitioned the court for a stay of treatment. So so the attorney was was trying to remedy the repeated incarcerations by asking the treatment requirement and the court responded by by granting immunity. Also, as as Chavez told the story, he was immediately arrested soon as he refused to file a paperwork and taken to jail failure to cooperate with treatment i.e. before he had a chance to talk to a lawyer before he had a a request therefore before he had a chance to request immunity the first time at least. Right, absolutely. Your honor, the the Sixth Amendment violation as well, the fact that he was denied access to counsel contributes to... He was also asked the question of whether he could have gotten a prior immunity. He says he was arrested immediately. So there was no prior no time in which he could have gotten this hearing, this immunity. Oh, that's possible, your honor, whether whether practically, you know, whether he if he had had access to counsel in that first meeting with defendant Robinson, as he requested, you know, perhaps the his counsel would have been able to, you know, would have been able to talk the defendants down from from reincarcerating him. But but you're probably right that he couldn't have immediately procured. I'm just reading from his declaration. Okay, the arrest and incarcerator he says. Yes, your honor. Also, are you handling the constitutional question as well as the immunity question? Yes, your honor. In terms of the qualified immunity question, if I can go to that point for a minute. The probation officer is acting pursuant to a court judgment, directing probation to place this person under terms and conditions that probation determines in a sex therapy program, right? Right, your honor. And the program that he was placed in with Mr. Robinson, I think, operated, again, was pursuant to a court order, right? Well, the court didn't specifically order that that Mr. Chavez participated in defendant Robinson's treatment program. Let's say that probation was authorized by the court to put him in that program. So that comes within the ambit of the court order. Yeah, so you is is given that scenario. Uh, why wouldn't a reasonable probation officer, as well as the therapy program operator, believe they were operating within the parameters of a valid order? And so that there's no clearly established constitutional right to Fifth Amendment under those circumstances in the I'd make two points in answering your question. First, this court's decision in United States versus Antelope clearly establishes that a probation officer can't imprison a probationer for asserting his Fifth Amendment right in response to questions that carry the risk of incrimination. And second, just the on the ground reality in this case was that Mr. Chavez had stood on his his Fifth Amendment right in treatment and had filed a proposed a proposal for for probation. We're not here on an Antelope case, though, because he's your your clients bring in 1983 action. So so the opposing counsel points out that Aguilera v. Baca, we said that for 1983 action, when you're using when you're using it as a sword, you have to plead and prove a violation of the core Fifth Amendment right, which is a compelled incriminating statement that is used in a criminal proceeding. So the opposing counsel said, well, the there here, your client never made an incriminating statement, and it was never used in a criminal proceeding. So you don't have a 1983 action. What's your response to that? Well, Your Honor, United States versus Antelope was was decided after after Chavez versus Martin. But that was a shield that was that was raised as a shield. And, and there's no arguing Antelope said what it said. The question is, can it be questioned better, Your Honor? So so in in Aguilera versus Baca, the question was presented in the employment context. And the officers in Aguilera, the plaintiffs in Aguilera, the only compultor, the only the only sanctions that they faced were transfers to be reassignment within the sheriff's department. And the Ninth Circuit found that that compulsion didn't didn't rise to violate the Fifth Amendment. But but to the extent that the that the court in Aguilera stitched together a majority in Chavez to find that absent introduction of compelled statements in in in a cases as well, right? Like Stute and Keelan. I mean, we crow, we have a number of cases saying the same thing. Aguilera v. Baca is the clearest statement of it. Have we ever held otherwise? Well, Your Honor, that the plaintiff could bring a 1983 action if he didn't make a compelled incriminating statement that was used in a criminal proceeding. Not not in a 1983 action, Your Honor, but but on very similar facts, United States v. Antelope clearly establishes that the defendant's conduct was was unconstitutional here and under the question that we have. I'm sorry. Question is whether there's a hardline rule that says that you can't break for some reason, even if you have what was really a Fifth Amendment violation, according to Antelope. You can't and the time is over for an appeal. You can't bring an affirmative 1983 action. What would be the reason for such a rule? Is there any rationale for such a rule? So Chavez, of course, was a situation in which he was, he was compelled to say something, but there was no ongoing proceeding. Here we have an ongoing appeal and he had a very specific reason for not wanting to do this, which is he had a pending, he had a currently pending criminal proceeding. So that's not a problem. It's not that that there's some speculative proceeding, as there are in a lot of these cases, there was a definite proceeding as an antelope. So the question is, what would be the rationale? And can our language in these other contexts be taken to mean that even if you even if there's a currently pending proceeding, you still can't bring an affirmative action? Your Honor, I don't think there is is a rationale. Didn't we say something about that in the Antelope situation was a prophylactic rule as opposed to in a 1983 action, you're looking for an actual constitutional violation. So there wasn't a constitutional violation in Antelope, it was merely prophylactic. That's what I understood the rationale to be. Your Honor, in United States versus Antelope, this court found that the Fifth Amendment had been violated by Mr. Antelope's repeated incarceration. Yeah, prophylactically like a Miranda violation. We call it a Fifth Amendment violation, but there's nothing in the Fifth Amendment that requires a Miranda warning. That was a judge made rule for as a prophylactic to ensure protection of the Fifth Amendment. And that's what we described this rule as. Well, Your Honor, even even assuming that that, Miranda or other remedies or other rules are prophylactic, here Mr. Chavez was denied every prophylaxis. Not when he finally requested immunity, right? He got the immunity. And he still refused to speak. So it wasn't indicated in your briefing that that wasn't also a violation. So I didn't see that. I missed it. Well, the complaint pleads the Fifth Amendment violation only for the first two periods of incarceration. But if the court considers immunity and Miranda prophylactic protections of the Fifth Amendment's core guarantee, Mr. Chavez, because he was denied those prophylaxis, because he was denied the released as Mr. Antelope was released, ordered released from custody. That's, you know, then this case falls squarely into Justice Souter's opinion and in Chavez versus Martinez, where the 1983 remedy is necessary to protect the Fifth Amendment's core guarantee. But by by by going to Justice Souter's opinion and giving the morality in Chavez, as well as considering what you construed Antelope, it seems to me as if, as we discuss these issues, there's a degree of uncertainty here. Your Honor, the Antelope decision came after Chavez versus Martinez and clearly established the Fifth Amendment violation in this case. There's there's no uncertainty that a probation officer cannot reincarcerate a person who asserts his Fifth Amendment right in response to compulsive questioning. Even if the probation officer was, was under, even if you consider in the objective part of you, not a subjective in terms of decisions here, that in an objective point of view, any, every, every probation officer clearly believe that there's an established constitutional right against asking those questions and be a violation of the Fifth Amendment. An objective probation officer acting pursuant to, at the time, a court order and admittedly a sentence, a court order that's currently on appeal. Is it really that clear? Well, Your Honor, United States versus Antelope relies on the Supreme Court's decision in Minnesota versus Murphy, which in 1984, set out the proposition that, you know, a probation officer can't reincarcerate a person. But I'm thinking, I was just going to read from Murphy, which says our decisions have made clear that the state could not constitutionally carry out a threat to revoke probation with legitimate exercise of the Fifth Amendment privilege. And Chavez's plurality opinion brought some questions into that whole process. The plurality opinion, to the extent that it undermines, you know, earlier majority opinions, you know, it is a plurality opinion and Minnesota versus Murphy is still good law. United States versus Antelope decided years later is certainly still good law. And how about Aguilera v. Baca? That would be another opinion that's good law, right? That's good law, certainly, Your Honor. But the Aguilera decision, well, I see that I'm over time, but I would love to respond to your point about Aguilera. Please respond to that and then conclude. Okay, thank you, Your Honor. The point I'd like to make about Aguilera v. Baca is just that, you know, in the employment context, and considering the Aguilera court considered the degree of compulsion brought to bear and just didn't find that those officers were subject to sufficient compulsion because they were transferred, their duties were changed, they weren't even fired. And the court... It was sort of analogous to McComb. Yes, exactly, Your Honor. And that the degree of compulsion wasn't sufficient. Yes, Your Honor. And Justice O'Connor's opinion, which has been recognized as controlling in the Ninth Circuit for the purposes of the Marks Rule in McComb strongly suggested that actual incarceration, if Mr. Lyle had been, you know, subject to longer incarceration, he might have had Okay, your time is up. We will give you a minute. Thank you, Your Honor. Ms. Jones. Thank you, Your Honors, and may it please the court. My name is Beth Jones, and I represent Defendant Appelli Lisa Moore, and thank you for allowing me to appear today under a student provision, even though I actually did graduate on Sunday and was sworn in yesterday. Thank you for allowing me to be here. Thank you. Defendant Moore maintains that she is entitled to qualified immunity in this case. Her alleged conduct did not violate constitutional rights, and even if there was a constitutional violation, qualified immunity still applies because at the time of Appellant's sanctions, it was not clearly established for Sixth Amendment purposes that participants in sex offender treatment are entitled to counsel under the Sixth Amendment during the intake process. Under the Fifth Amendment, it was not clearly established that the self-incrimination clause is violated for 1983 purposes, even when an involuntary statement is not used against a criminal defendant, and it was not clearly established for First Amendment purposes that parolees could not be sanctioned for non-compliance and continued non-compliance after filing a civil suit, and even if the complaints in the civil suit evidenced plaintiffs' willful non-compliance with the parolees' conditions. The Fifth Amendment context, relevant question isn't whether a person could be subject to liability, they're relevant for qualified immunity purposes. The relevant question is they knew what they were doing or they should have known was unconstitutional, isn't that right? In other words, the 1983 remedy is a statutory remedy, it's not the constitutional violation that we look at for purposes of qualified immunity. And that's been a really interesting question in this case, is when does the Fifth Amendment constitutional right apply? And we maintain that there are two prongs to the Fifth Amendment. The first prong is that your statements may not be compelled, and the second prong is you may not be compelled to be a witness against yourself in a criminal trial. So here we have a situation where an appellant may logically argue that his statements were compelled or involuntarily provided. However, without that second prong of use against him in a criminal case, he cannot maintain the Fifth Amendment as a sword. Isn't that exactly what Antelope did? No, in Antelope, and again, Antelope was not a violation of a 1983. But that's the point. 1983 is not about, it's not a violation. 1983 is a cause of action for something else, a violation of a constitutional right. And Antelope was about that constitutional right, and it was head on in terms of the substance of the constitutional right, wasn't it? In some aspects, Your Honor, there is a big difference there. In Antelope, the parolee was required to admit to crimes that he had not been convicted of. He admitted to, and they found that admitted to that his silence about his conduct could constitute crimes. Did Chavez, did the Chavez here, did he make any incriminating statements? Our Chavez did not make any incriminating statements. He chose silence. So he didn't make any incriminating statements. So obviously, no incriminating statements were being used against him in a criminal proceeding, correct? Correct, Your Honor. Okay, so his lawsuit is that his 1983 actions as constitutional rights were violated, despite the fact that he didn't make a compelled incriminating statement as used in a criminal proceeding, correct? Yes, Your Honor. And so the argument is that because the government tried to get him to make Yes, Your Honor. Because he refused, he was sanctioned. So in Antelope, he would have been able to raise a shield against being compelled, but I don't see any basis for saying that he has a constitutional claim here. So why does Antelope, given Aguilar v. Baca? But if I make sense, that if Antelope says you can't be, the government can't try to compel you and then punish you if you don't speak, why doesn't that violate his Fifth Amendment rights for 1983 purposes? Because no statement was ever used against him in a criminal case. Wait, Antelope, was any question used against him? Answer? Antelope, was any answer used against him? Antelope involved his silence. Right, this case involves his silence. It's exactly the same posture except for the fact that there he was appealing his imprisonment and here he was, didn't do so and now is bringing an affirmative action. Is that accurate? Yes, Your Honor. Maybe a significant difference, but it doesn't seem like it's a difference as to the constitutional right. So the plurality in Chavez, the other Chavez, the constitutional Chavez, the plurality says, yeah, there's a huge difference. And you can't claim a constitutional violation for 1983 purposes absent your incriminating statement being used against you. But how does that make sense with Antelope as the flip side? I guess that's the core question here. Again, we contend that it's a sword versus a shield situation. And you have greater protections when you're using and asserting the Fifth Amendment as a shield, you have greater protections and privileges to immunity. But when you're asserting this as a sword, it is not as broad. Because why? I mean, Chavez... You haven't violated a core Fifth Amendment. The Fifth Amendment requires for a full violation of the core Fifth Amendment rights, you must have a statement used against you. Suppose somebody was called before a grand jury and required to answer questions and say they were the target of the grand jury. And they said no, they're going to claim their First the Fifth Amendment right. And the judge said, okay, you're going to jail. All right, and they go to jail and then they're there for a long time. And then when they're eventually they bring a 1983 action, you're saying that there was no violation of their Fifth Amendment, right? No, you say that can't bring an affirmative case. Your Honor, I would say that their privilege against self-incrimination has been violated, and they have a right to immunity and to suppress those statements. I would not say that they have a 1983 action. All right, but they don't get immunity. So now they want to bring their 1983 action. Well, I guess if they spoke, if they did, to avoid going to jail, and they spoke, and that statement was used, then they would be able to claim that they should be immune and presumably a court applying the correct law would do that. I guess I'm not sure about the, given that the scenario is one where the court is making a decision, the court would have absolute judicial immunity anyway, I guess, so you wouldn't have a 1983 action. Prosecutor, somebody. The point is that I find it hard to believe that there's not a Fifth Amendment violation. And Your Honor, we would still contend that there is no case on point for Defendant Moore to disqualify her from qualified immunity. Whether there's a Fifth Amendment violation, there's Antelope. That's directly about whether there's a Fifth Amendment violation. There's a separate question about whether you can bring it as a 1983 action. For some reason, it has to do with it being a 1983 action, but there's no question about it being a Fifth Amendment violation. Well, we contend that the privilege from the first prong of the Fifth Amendment was violated. In Antelope, however, the core Fifth Amendment right was not. All right, what about the right to counsel? I'm sorry, the right to counsel, did you say? Yes, that's what I said. Okay. I mean, in the context that this was a case in which there was a proved out actual reversal with a new trial. And so, A, he had a right to counsel with regard to that appeal, right? Yes, Your Honor. And he had a Fifth Amendment right with regard to that second trial, right? In other words, this was not in the sky the way it was in Chavez and some other cases. There was an actual pinging proceeding. Yes, Your Honor. I thought the right to counsel was asserted for the therapy session. Is that correct? That's how I read it. Yes, Your Honor. He asserted it for the therapy session. Appellant believed that he had a right to counsel on his appeal because of his concerns about the therapy session's statements affect on a potential trial after he prevailed on the cause of the appending appeal. But was he asking for counsel to consult with counsel in the therapy session? That was my understanding. So, the question is the right to counsel for your therapy session. Yes, Your Honor. Am I understanding that right? Yes, Your Honor. Well, I thought, maybe I was reading in, that he wanted to have a right to consult with counsel about the impact of the therapy session on his appeal and any retrial. I don't know if he was asking to bring the lawyer into the therapy session. I don't, I'm not under the impression. I'm sorry. I'm not under the impression he was requesting counsel in his therapy session. He was asking to consult with counsel to make the decision whether to sign this thing before he had a sign. Yes. All right. Anything else? Well, we contend that Defendant Moore is entitled to qualified immunity because these claims, especially the Fifth Amendment claim, is very interesting to consider, but there still is not a case on point to guide her as to it being unconstitutional to send him to a treatment program that requires statements of your conviction, unlike Antelope that did require statements of prior crimes. Requirement here was that he, first of all, I don't know why that's a difference when he is, has a pending appeal and he's going to have another trial, but second of all, and he did have another trial, but second of all, my understanding of what he said he had to fill was everything he ever did, any other crime he ever did, any other sexual violation, et cetera. That was true. In this case. No, here he was only required to admit to the conduct he was convicted of. He was not required to admit to past conduct, but in Antelope he was. So we maintain that Defendant Moore as a parole officer was doing her job. She was not on notice that she was violating any constitutional rights and she should maintain qualified immunity for this. And if there are no any further questions, I will rest. Thank you. Thank you. Mr. Tucker, that last statement, correct? I thought that he had to write everything that he ever mentioned. No, Your Honor, he was only, he was asked to admit to the crimes underlying his conviction. But, but Your Honor, he says that Mr. in his affidavit that Mr. Robin provided 30 pages of mandatory admittance to not only the crime of conviction, but all other crimes of complete sex history, polygraph testing, et cetera. Is that contradicted by something else in the record? Your Honor, the complaint pleads that Mr. Chavez was concerned about his pending appeal and the being forced to admit to the charges that he was originally convicted of. Counsel, would it have made a difference if the probation officer, particularly Mr. Robinson, since that's who asked the question, whether the right was asserted? Would it have made any difference if Mr. Robinson had said, I'm only asking you this for purposes of treatment, not for purposes of, say, prosecution or anything in connection with your appeal? Would that have made any difference here? Your Honor, as United States v. Balsas counsels, the absence of formal grant of prosecutorial immunity, a defendant has no reason to believe that his Fifth Amendment rights will be protected. So there would be no difference if he had had an informal promise from Defendant Robinson. And just as you argue that antelope controls here in the context of the right to assert the Fifth Amendment privilege against self-incrimination, is there any legal precedent that says that the dependency of an appeal, a defendant has a right to counsel in probation proceedings? Not in probation proceedings, Your Honor, but the district court erred in analyzing this case in the context of probation to counsel on appeal. And that is that the right to counsel on appeal is clearly established. And the fact that the Fifth Amendment right against compelled self-incrimination can be placed at risk even after conviction and sentencing, and even as to the charges underlying conviction, that principle is clearly established in this court's precedent, Cahill v. Russian, where a person was denied counsel during a post-sentencing interrogation. Okay, your time is up. Judge Linnell, do you have another question? No, no, I was just saying that in Cahill, the purpose of that questioning was to elicit a confession from that defendant. Yeah, to be used at the second trial. Yeah. He's saying that's just the same thing, that they were essentially getting confession from him. That's right, Your Honor. All right, an interesting and difficult case. Thank you very much. Thank you again. Thank you. Excellent representation by not-quite-yet lawyers, and congratulations on your graduation. Mr. Trapper, did you graduate too, or you're still No, I graduated on May 5th. Congratulations to both of you. Congratulations. And we are in case of... Chavez v. Robinson is submitted, and we are adjourned, finally, from our April calendar. Thank you very much. Thank you.
judges: Berzon, Ikuta, Lemelle